## Caudill v. Dinwiddie (two cases).

November 11, 1949.

Rehearing denied May 2, 1950.

E. J. Felts, Judge.

Bell, Stagner & Orr and Joe P. Clark for appellant.

Finn & Orendorf for appellees.

JUDGE KNIGHT—Affirming.

On the evening of January 15, 1947, at the intersection of Main and Madison Streets in Franklin, Ky., appellee, Mrs. Will Winwiddie, was injured by being hit by an automobile, owned and driven by appellant, James Caudill. She brought suit for $10,000 for damages. Her husband, Will Dinwiddie, appellee herein, also brought suit against defendant, Caudill, for $2,500 for loss of his wife's services and $731.70 for money expended by him for hospital and medical bills. On the first trial of the consolidated cases on March 16, 1948, the jury brought in a verdict for the defendant Caudill in both cases. On motion of the plaintiffs the judgment entered in conformity with this verdict was set aside and a new trial ordered. At the second trial of the cases on June 18, 1948, the jury brought in a verdict for $1,750 in favor of Mrs. Dinwiddie and for $731.70 in favor of Mr. Dinwiddie. Appellant prosecutes this appeal from a judgment based on the verdict, asking that it be set aside and that the judgment based on the verdict of the jury in the first trial be reinstated.

### Grounds for Reversal.

Reversal of the judgment is sought on two grounds: (1) that the trial court erred in setting aside the first judgment and granting a new trial; and, (2) that the trial court erred in his instructions to the jury on the second trial.

We shall consider and dispose of the first ground at once, since it has no relation to the evidence, and will

discuss and dispose of the second ground after further statement of the case and some consideration of the evidence.

1. In the motion and grounds for a new trial filed by the plaintiffs after the first trial and by affidavits filed in support thereof, it was shown that two of the jurors on that trial, James Yokley and U. C. Edwards, had certain connections and relationship with the defendant Caudill which were not disclosed on their voir dire examination; that James Yokley's first cousin married Jim Cummings, uncle of James Caudill, in other words, that James Yokley and Jim Cummings are first cousins by marriage and James Caudill is Jim Cummings' nephew; that James Caudill's father's first cousin was Virgil Caudill who had a son named Edwin Caudill who married a daughter of the juror U. C. Edwards, in other words, that Mr. Edward's daughter and James Caudill are second or third cousins. It was stated in the motion for a new trial that this relationship was not known by plaintiffs or their attorneys and if it had been known they would have been rejected as jurors. It was further shown that these jurors were two of the nine who signed the verdict for the defendant in the first trial. In its ruling on the question of granting a new trial on the above ground, the trial court said: "The attorneys in interrogating the jury asked the jurors if either of them were related by blood or marriage to the defendant James Caudill or to either of the plaintiffs, Will Dinwiddie or Mrs. Will Dinwiddie. The court feels that every litigant, plaintiff or defendant is entitled to a trial by a jury not related, not engaged in business or closely associated in a social way, in a trial of his matters. * * * The fact that the jury was interrogated and failed to disclose their relationship, deprived counsel of the opportunity to go into the matter to determine whether the facts justified challenging any juror, upon which the court would pass. * * * The court does not know and has no way of knowing whether or not those jurors might have been influenced by the relationship and cannot inquire into that but under that state of facts the court feels that the jury should give all the facts when questioned and called upon to do so and the court cannot help but feel that it is misconduct upon the part of the jury that would entitle a litigant to a new trial or a rehearing of his matters."

We think the reasons above given by the court were

sufficient to justify the exercise of his discretion in granting a new trial under the facts of this case. It is not necessary for us to decide whether the relationship between these two jurors and the defendant was close enough to justify their challenge for cause. We agree with the court below that the relationship and family connections were so close that they should have been made known so that the attorneys could strike their names off the list and obtain in their place two others who had no family connections. We are of the opinion that the court did not err in granting plaintiffs a new trial under these circumstances and that it acted within its reasonable discretion in such matters.

### Facts in the Case.

On the January night above referred to at about 7:00 o'clock in the evening appellees were walking in a westerly direction from their home on East Madison Street on the way to prayer meeting at their church located at Madison and College Streets. Madison Street runs east and west, and on their way they had to cross High Street, which is also part of U. S. 31W and runs north and south. There is a traffic light located at the center of the intersecting streets and the street lights were burning. As appellees reached Main Street the red light was against them but after looking north, south, east and west, and seeing no approaching cars, they started across Main Street which is 53 feet wide at this point. According to appellees' testimony, they had reached a point about nine feet from the western side of the street when Mrs. Dinwiddie was struck by the bumper of appellant's car and knocked down. She was walking a few steps in front of her husband and he was not struck. Her left knee was fractured in two places; there were lacerations near the margin of her right eye, multiple abrasions and contusions on her body and she was in a state of mild shock. She remained in the hospital eight weeks and was in bed at home a month and has to walk with a crutch.

Going back to appellant and his connection with the accident: according to his testimony he was driving east on Madison at a speed of twelve or fifteen miles an hour; as he neared the intersection of Madison and Main the traffic light was red but as he reached the intersection it turned green; he did not stop but changed to second gear

and made the left turn into Main Street, going north; as he turned he saw Mr. Dinwiddie about ten or twelve feet in front of him and about three or four feet from the center of High Street, that is toward the eastern side of the street from which he had come; he did not see Mrs. Dinwiddie at that time and he cut his car to the left and, as he did so, hit Mrs. Dinwiddie; he admitted that he did not blow his horn or give any signal that he was going to make a left turn.

## Instructions.

2. Both sides offered lengthy instructions, some of which were given and some rejected. The court gave instructions A, B and C offered by defendant covering Mr. Dinwiddie's case and no objection is raised to them. In Mrs. Dinwiddie's case, the court gave eight instructions of which two were offered by defendant and none of which were offered by plaintiff. Appellant complains only of instruction No. 3 which is the instruction covering the measure of damages. This instruction is too long to copy in full but in addition to the usual language which allowed the jury to award her such sum as would fairly and reasonably compensate her for the pain and suffering resulting from the negligence of the defendant, if any, it further authorized recovery if the jury believe from the evidence that plaintiff at the time of the accident had a latent case of arthritis in her left knee which prior to said injuries had manifested no symptoms of said disease or had given her no pain or trouble; but as a direct and proximate result of said injuries said disease was caused to develop and thereby to become aggravated, and cause her to suffer pain and anguish; and if the jury believe that it is reasonably certain from the evidence that plaintiff will continue to suffer indefinitely as a direct and proximate result of said injuries from said arthritis, then the jury will award such sum as will compensate her for said pain and suffering not exceeding $5,000, as claimed in the petition. The instruction further provided that if plaintiff was caused to suffer a shock to her nervous system which damaged same and from which she still suffers, and it is reasonably certain from the evidence she will suffer indefinitely, the jury may award her such additional sum as will compensate her for the destruction of her nervous system not exceeding $5,000, the sum prayed for, and in all not exceeding $10,000, the total sum prayed for in the petition.

The petition had alleged that the traumatic injury had caused an acute and active case of arthritis to develop in her knee from which she would suffer permanently and which disease she had not been aware of or suffered from prior to the accident, in other words, that a latent arthritic condition had been converted into an active and acute one by the injury. In her amended petition it was alleged that as a direct and proximate result of the injury and the shock to her nervous system she had become extremely nervous and her nervous system had been damaged. There was some evidence to sustain both these allegations and we think it was not error to submit that issue under instruction No. 3 which is as nearly in proper form as instruction "Z" offered by defendant. But even if the instruction is slightly erroneous in form we do not think it was prejudicial in view of the comparatively small verdict awarded Mrs. Dinwiddie, considering the extent of her injuries.

Upon consideration of the whole case we are of the opinion that the record is without reversible error and the judgment is therefore affirmed.